RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

NITHYA SENRA (CABN 291803)
Trial Attorney, Tax Division
U. S. Department of Justice
   P.O. Box 683, Ben Franklin Station
   Washington, D.C. 20044
   Telephone: (202) 307-6570
   Fax: (202) 307-0054
   E-mail:   Nithya.Senra@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
*Of Counsel*
Attorneys for the United States of America

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br><br>        v.<br><br>OMAR G. FIRESTONE, Individually, as Statutory Executor of the Estate of Ghaida M. Firestone, as co-Trustee of the Ghaida M. Firestone Living Trust, and as Beneficial Transferee of the Ghaida M. Firestone Living Trust;<br><br>MARTA E. FIRESTONE, a/k/a Marta E. Quijada, Individually, as trustee of the Firestone Irrevocable Trust, and as a transferee of Omar G. Firestone;<br><br>ENRIQUE QUIJADA, individually and as a transferee of a transferee of Omar G. Firestone;<br><br>LEILA A. FIRESTONE, individually and as a transferee of Omar G. Firestone;<br>        Defendants. | Case No. **'19 CV0003 DMS KSC**<br><br>COMPLAINT |

COMPLAINT                                  1

Plaintiff, the United States of America, by and through undersigned counsel, complains and alleges as follows:

1.     The United States of America brings this action in part to obtain a money judgment pursuant to 26 U.S.C. § 6324(a) for the federal estate tax of the Estate of Ghaida M. Firestone ("Estate") for $2,537,554.26 as of April 2, 2018, in unpaid estate taxes, penalties and interest.

2.     The defendants, Omar G. Firestone and Marta E. Firestone have engaged in a number of transfers of assets available to collect the unpaid federal estate tax liability, and the United States files this action seeking to unwind these transfers, which are voidable under California law, and to collect against assets subject to either the estate tax lien, 26 U.S.C § 6324(a)(1), or the "like lien" provided under 26 U.S.C. § 6324(a)(2).

3.     The United States also seeks money judgments against defendants Omar G. Firestone, Marta E. Firestone, Leila Firestone, and Enrique Quijada for their liability arising out of such unpaid estate taxes under 26 U.S.C. §§ 2203, 6324, and/or California law.

4.     Additionally, the United States seeks to foreclose its estate tax liens against assets encumbered by the estate tax lien provided under 26 U.S.C § 6324(a)(1), and property acquired by the defendants to this action which would be subject to the "like lien" provided under 26 U.S.C. § 6324(a)(2), including the foreclosure of real property located in Chula Vista, California, obtaining writs of attachment related to certain financial accounts with funds traceable to assets of the Estate, and obtain an order repatriating assets to the extent necessary to satisfy any money judgment entered by the Court.

5.     This civil action is commenced pursuant to 26 U.S.C. §§ 7401, 7402, 7403

COMPLAINT                                    2

and 7404 at the direction of a delegate of the Attorney General of the United States, and at the request and with the authorization of the Chief Counsel of the Internal Revenue Service, a delegate of the Secretary of the Treasury of the United States.

6.  Jurisdiction over this action is conferred on this Court by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402.

7.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and 1396, because the real property at issue is within this district, a substantial portion of the events giving rise to the claims in this action occurred in this district, and proceeds of the Estate were distributed within this judicial district.  Furthermore, defendants Omar G. Firestone, Marta E. Firestone, and Enrique Quijada reside within this district.

## IDENTIFICATION OF THE DEFENDANTS

8.  Defendant Omar G. Firestone (hereafter "Omar") is a son of Ghaida M. Firestone ("Ghaida"), a co-executor of the Estate, and a trustee of the Ghaida M. Firestone Living Trust ("Ghaida Living Trust"). He is also a transferee of certain assets distributed to him from the Estate through the Ghaida Living Trust, and/or otherwise received, on the date of Ghaida's death, property that was includible in Ghaida's gross estate. Omar is sued in his representative capacity as the statutory executor of the Estate under 26 U.S.C. §§ 2002 and 2203.  Omar is also sued in his individual capacity for personal liability under 26 U.S.C. § 6324(a)(2) for amounts he held as co-Trustee of the Ghaida Living Trust on the date of Ghaida's death.  Finally, Omar is named as a defendant because he may claim an interest in the property upon which the United States seeks to enforce its lien.

9.  Defendant Marta E. Firestone, a/k/a Marta E. Quijada, (hereafter, "Marta") is named as a defendant in this action as a (i) party to transfers that are voidable under

California law, (ii) trustee of numerous trusts that held or presently hold assets traceable to the Estate, including the Firestone Living Trust (Omar and Marta's living trust established June 2, 2009), and the Firestone Irrevocable Trust (established by Marta on February 23, 2015), and as a (iii) recipient of property traceable to the Estate. At the time of Ghaida's death, Marta was married to Omar and was the decedent's daughter-in-law.

10.  Defendant Enrique Quijada, Marta's father (i.e. Omar's father-in-law) is named as a defendant as a(n) (i) recipient of property traceable to the Estate; (ii) nominee of Marta and/or Omar; (iii) transferee of Marta and/or Omar; (iv) individual who may claim an interest in real property at issue in this action; and (v) recipient of transfers that are voidable under California law.

11.  Defendant Leila Firestone, Omar and Marta's daughter (Ghaida's granddaughter) is named as a defendant as a (i) transferee of Omar and/or Marta, (ii) recipient of assets traceable to the Estate, (iii) nominee of Omar and/or Marta, and (iv) recipient of transfers that are voidable under California law.

## THE ESTATE OF GHAIDA M. FIRESTONE

12.  Ghaida M. Firestone was born in Palestine (previously known as Mandatory Palestine, or British Palestine) in 1930. She died on March 31, 2009 in San Mateo County, California. Ghaida Firestone had two children, Omar and Ramses S. Firestone ("Ramses").

13.  On March 10, 2009, three weeks prior to her death, she established the Ghaida Living Trust and executed a Last Will and Testament ("Will").

14.  The Ghaida Living Trust designated Ghaida's two children, Omar and Ramses, as co-Trustees.

15.  The following assets were delivered to the trustees of the Ghaida Living

COMPLAINT                                            4

Trust on March 10, 2009, the same date as its establishment:

| PROPERTY TRANSFERRED TO THE GHAIDA LIVING TRUST ON 3/10/2009 |
| --- |
| 1.  Real Property located at 2201 St. Francis Drive, Palo Alto, CA 94303 |
| 2.  Real Property located at 884 Colorado Avenue, Palo Alto, CA 94303 |
| 3.  Real Property located at 289 Sea Vale Street, Chula Vista, CA 91910 |
| 4. Any and all real estate held in the name of Ghaida M. Firestone in Israel, Syria, Lebanon, or Jordan |
| 5.  Any and all of Ghaida M. Firestone's beneficial interest in real estate in Israel |
| 6. Vanguard Fiduciary Trust Co. Checking Account -5087 |
| 7. Stanford Federal Credit Union, Savings Account -2944 |
| 8. Stanford Federal Credit Union, Premier Market Savings Account -0149 |
| 9. Stanford Federal Credit Union, 12 month Share Certificate, Account -9275 |
| 10. Any and all accounts at The Arab Bank |

16.     Also on March 10, 2009, Ghaida executed Quitclaim Deeds to transfer title to the three parcels of real estate located in California (2201 St. Francis Drive, 884 Colorado Avenue, and 289 Sea Vale Street) to Omar and Ramses as the trustees of the Ghaida Living Trust.  Each of the California properties were owned by Ghaida free and clear of encumbrances at the time she executed the Quitclaim Deeds.

17.     The Will designated Omar and Ramses as co-executors, and was a "pour-over will", such that all of Ms. Firestone's remaining personal and real property poured over into the possession of the trustees of the Trust.  As a result, there was no probate of the Will.

18.     At the time of her death, Ghaida controlled 300,000 shares in Arab Bank stock. The value of these shares exceeded $3 million. Ghaida also had an Arab Bank savings account with funds exceeding $800,000.  The Arab Bank shares and savings account were held in the Kingdom of Jordan.

19.     At the time of Ghaida's death, Omar was aware that Ghaida controlled the shares in Arab Bank and had the Arab Bank savings account.

COMPLAINT                              5

20.     On August 11, 2010, Omar obtained a valuation opinion that estimated the 300,000 Arab Bank shares were trading at a $15.76 per share according to the Amman Stock Exchange.  The appraisal received by Omar opined a value of $3.547 million at the time of Ghaida's death, factoring in discounts due to the marketability of the shares.

## THE ESTATE'S FEDERAL TAX LIABILITIES

21.     On or about March 2, 2011, Omar filed a Form 706 Estate Tax Return for the Estate of Ghaida Firestone, which reported a gross estate value of $5,120,869 and estate tax due of $1,117,724.  Omar was listed as the executor of the Estate on the Form 706, and listed 289 Sea Vale Street, Chula Vista, California as his address. Ramses was identified as an additional executor, and Ramses's address was listed as 884 Colorado Ave, Palo Alto, California.

22.     The Form 706 Estate Tax Return filed by Omar failed to identify all of the assets of the gross estate of Ghaida M. Firestone, and failed to accurately list the fair market value of those assets.

23.     The Estate was notified in January of 2012 that the Form 706 Estate Tax Return was selected for audit by the Internal Revenue Service (IRS). Throughout 2012, Omar was aware that the IRS was examining the failure to report certain assets on the estate tax return, and that the IRS contended that the Estate was likely to owe additional amounts than was reported on the original estate tax return.  On October 25, 2012, Omar was sent a draft report proposing a deficiency of over $1.4 million owed by the Estate. On January 24, 2013, Omar received a second written notice of a proposed deficiency of over $1.4 million owed by the Estate.

24.     On May 14, 2013, the IRS sent Omar a copy of the proposed changes to the Estate's tax liability by certified mail to 289 Sea Vale Street, Chula Vista, CA 91910.

25.     On January 14, 2014, less than three years after the estate tax return was filed, a statutory notice of deficiency was timely issued to the Estate of Ghaida M. Meo Firestone, Omar Firestone, Executor, for a deficiency in estate tax in the amount of $1,409,822.00, a late filing addition to tax under 26 U.S.C. § 6651(a)(1) in the amount of $352,456.00, and an accuracy-related penalty under 26 U.S.C. § 6662(a) in the amount of $45,000.00.

26.     On April 14, 2014, Omar, as executor of the Estate, filed a Tax Court petition, Docket No. 8283-14, *Estate of Ghaida M. Firestone, deceased; Omar Firestone, Executor, v. Commissioner of Internal Revenue*, to contest the proposed additional estate tax liabilities.

27.     At a hearing before the Tax Court on March 23, 2015, the parties notified the Court that the case had settled, and that same day filed a stipulation of settled issues. The Estate and the Commissioner stipulated that the assets of the gross estate and their fair market value at the time of transfer from the decedent were as follows:

| PROPERTY OF THE GROSS ESTATE OF GHAIDA M. FIRESTONE | FAIR MARKET VALUE |
|---|---|
| 1.  Real Property located at 2201 St. Francis Drive, Palo Alto, CA 94303 | $1,000,000 |
| 2.  Real Property located at 884 Colorado Avenue, Palo Alto, CA 94303 | $1,350,000 |
| 3.  Real Property located at 289 Sea Vale Street, Chula Vista, CA 91910 | $335,000 |
| 4. Stanford Federal Credit Union, Savings Account - 2944 | $150,174 |
| 5. Stanford Federal Credit Union, Premier Market Savings Account -0149 | $327,054 |
| 6. Stanford Federal Credit Union, 12 month Share Certificate, Account -9275 | $1,173,177 |
| 7. Arab Bank Stock | $3,456,999 |
| 8. Arab Bank Savings Account | $838,258 |
| 9. Stock of Lesser Evil Studios (Ramses' company) | $423,705 |
| Total Value of Gross Estate | $9,054,367.00 |

28.     On April 3, 2015, the Estate stipulated to the entry of the Tax Court decision (entered by the Tax Court on April 21, 2015), that there was a deficiency in estate tax due from the Estate in the amount of $1,316,430.00, a late filing addition to tax owed pursuant to 26 U.S.C. § 6651(a)(1) in the amount of $329,107.00, and an accuracy-related penalty due from the Estate pursuant to 26 U.S.C. § 6662(a) in the amount of $38,133.00.

29.     Even though the Estate stipulated to these liabilities, and Omar and Ramses as co-executors of the Estate administered assets that exceeded $9 million dollars in value at the time of the decedent's death, there remains a balance owed of $2,537,554.26, as of April 2, 2018, in unpaid estate taxes, penalties and interest.

## COUNT I: REDUCE ESTATE TAX ASSESSMENTS TO JUDGMENT AGAINST THE ESTATE

30.     Ghaida died testate on March 31, 2009. In her Will, Ghaida appointed Omar and Ramses as personal representatives and co-executors of her estate.

31.     On June 29, 2015, a duly-authorized delegate of the Secretary of Treasury assessed an additional $1,316,430 in federal estate taxes against the Estate, a late filing addition to tax owed pursuant to 26 U.S.C. § 6651(a)(1) in the amount of $329,107.00, an accuracy-related penalty due from the Estate pursuant to 26 U.S.C. § 6662(a) in the amount of $38,133.00, and interest assessed in the amount of $294,268.69.

32.     Notice of the assessments described in paragraph 31, above, along with demand for payment of the assessments, was given to the Estate.

33.     Despite notice and demand for payment of the assessments described in paragraph 32 above, the assessments have not been paid in full to date.

COMPLAINT                                        8

34.     Due to the Estate's failure to pay the full amount of the assessments due and owing, interest and statutory additions to tax have accrued pursuant to statute. As of April 2, 2018, there remains due and owing to the United States the sum of $2,537,554.26, plus interest and accruals according to law after that date.

WHEREFORE, the United States of America requests that the Court:

A.     Enter judgment in favor of the United States America and against Omar G. Firestone in his capacity as co-executor of the Estate of Ghaida M. Firestone, in the amount of $2,537,554.26 plus statutory accruals according to law from April 2, 2018, until paid.

## COUNT II: IMPOSE TRANSFEREE LIABILITY AGAINST OMAR

35.     Omar, as co-executor of the Estate, transferred assets encumbered by the special estate tax lien of 26 U.S.C. § 6324(a)(1), and subject to the like lien of 26 U.S.C. § 6324(a)(2).

36.     The United States seeks to collect property includible in the gross estate of the Decedent, and property subsequently transferred that is still encumbered by the special estate tax lien of 26 U.S.C. § 6324(a)(1), or subject to the like lien of 26 U.S.C. § 6324(a)(2).

37.     If an estate tax liability is owed, then a transferee, trustee, or "person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate" is personally liable for the estate tax liability to the extent of the value of that property. 26 U.S.C. § 6324(a)(2).

38.     On March 10, 2009, Ghaida settled the Ghaida Living Trust, a revocable trust. Upon settlement of the trust, Omar and Ramses were named trustees of the Ghaida

COMPLAINT                                    9

1 | Living Trust.

2 | 39. At the time of Ghaida's death, her gross estate was valued at $9,054,367.00.

3 | The gross estate included both assets administered through the probate estate as well as

4 | non-probate assets. The non-probate assets included assets placed in the Ghaida Living

5 | Trust.

6 | 40. Under 26 U.S.C. §§ 2034 through 2042, the Ghaida Living Trust's assets

7 | were includible in the Decedent's gross estate.

8 | 41. The Will and the Ghaida Living Trust required the Co-Executors to pay any

9 | federal estate tax liabilities before distributing assets of the Estate or the Trust.

10 | 42. Omar and Ramses transferred assets of the probate estate as well as Trust

11 | assets to Omar, or Omar otherwise took control or possession of assets includible in

12 | Ghaida's gross estate, without first satisfying the federal estate tax liabilities.

13 | 43. By virtue of his possession, control, or receipt of the assets includible in the

14 | gross estate while failing to pay the federal estate tax liabilities, Omar became liable

15 | under 26 U.S.C. § 6324(a)(2) for the estate tax liabilities up to the value of the assets that

16 | the Co-Executors possessed, controlled, or received.

17 | 44. Because the value of the assets in the gross estate exceeded the unpaid

18 | amount of the federal estate tax liabilities, Omar is liable for the full amount of those

19 | liabilities.

20 | WHEREFORE, the United States of America requests that the Court:

21 | B. Enter judgment in favor of the United States of America and against Omar G.

22 | Firestone, jointly and severally, in his personal capacity, in the amount $2,537,554.26,

23 | plus statutory accruals after April 2, 2018, until paid.

24 | //

COMPLAINT                                        10

## COUNT III: IMPOSE FIDUCIARY LIABILITY AGAINST OMAR BOTH AS CO-EXECUTOR AND AS TRUSTEE

45.     Under 31 U.S.C. § 3713(b), a representative of an estate who pays a debt of the estate before paying any debt owed to the United States becomes personally liable to the United States for the unpaid claims to the extent of such payment.

46.     The Co-Executors were the personal representatives of the Estate of Ghaida M. Firestone.

47.     As personal representatives of the Estate, the Co-Executors had authority and control over the assets of the probate estate. As trustees of the Ghaida Living Trust, they also had authority and control of the non-probate assets in the Trust. The Trust's terms specifically authorized the use of Trust's assets to pay any estate tax liability.

48.     The Co-Executors knew or should have known that the estate would be liable for a federal estate tax liability.

49.     No discharge of fiduciary liability was requested or granted under 26 U.S.C. § 2204.

50.     Omar transferred property of the Estate and Trust to himself and then to Marta and Leila without first paying the estate tax liability.

51.     Omar's transfers rendered the Estate insolvent.

52.     The value of these transfers exceeded the current unpaid federal estate tax liability, and consequently, Omar is personally liable for the unpaid federal estate tax, including interest and penalties.

WHEREFORE, the United States of America requests that the Court:

C. Enter judgment in favor of the United States of America and against Omar G. Firestone, in his personal capacity in the amount $2,537,554.26, plus interest and

COMPLAINT                                    11

statutory additions accruing from April 2, 2018, until paid.

**COUNT IV: ENFORCE ESTATE TAX LIEN AGAINST MARTA FOR ASSETS STILL SUBJECT TO ESTATE TAX LIEN AND ENFORCE THE LIKE LIEN AGAINST MARTA AS A TRANSFEREE OF A TRANSFEREE BOTH PERSONALLY AND IN HER CAPACITY AS TRUSTEE OF THE FIRESTONE IRREVOCABLE TRUST**

*Funds Traceable to the Gross Estate*

53.    The estate tax lien, set forth in 26 U.S.C. § 6324(a)(1) attached to all of the property in the Ghaida Living Trust, up to the amount of the value of the property at the time of the decedent's death. The estate tax lien continued to attach to such property, even if transferred, until such property was sold to a purchaser or transferred to a holder of a security interest. Upon such a transfer a "like lien," as set forth in the second sentence of 26 U.S.C. § 6324(a)(2), attached to all the property of the transferor.

54.    In short, the estate tax lien attaches to the gross property of the estate until the lien lapses or the property is transferred to a purchaser. Upon such a transfer, a "like lien" arises and encumbers the property of the transferor.

*St. Francis Drive Property*

55.    In November of 2010, Omar and Ramses sold the real property located at 2201 St. Francis Drive, Palo Alto, CA 94303. The real property was a non-probate asset in the Ghaida Living Trust.

56.    On November 5, 2010, Omar received $386,517.10 from the proceeds of the sale of the St. Francis property, which he deposited into a joint account at Union Bank, account number ending in -5452, which was jointly owned with Marta; or alternatively, jointly managed with Marta and held in the Firestone Living Trust for the benefit of Omar and Marta.

57.    The like lien set forth in the second sentence of 26 U.S.C. § 6324(a)(2)

COMPLAINT                                    12

attached to the $386,517.10 in sale proceeds, and continued to attach to those funds when they were deposited in the Union Bank account number ending in -5452.

58.     On November 15, 2010, Omar and/or Marta transferred $150,769.75 from the joint Union Bank account, account number ending in -5452, to a UnionBanc Investment Services brokerage account, account number ending in -4127, jointly held by Omar and Marta.

59.     On June 24, 2013, Omar and/or Marta transferred $372,339.60 in securities held in the jointly managed brokerage account ending in -4127 to Marta's separate brokerage account ending in -5490, which was held in Marta's name alone. The like lien attached to all property in the joint brokerage account, due to Omar's liability under 26 U.S.C. § 6324(a)(2) for having sold property included in the gross estate, up to the value of the property sold.

60.     This transfer of $372,339.60 in securities from the joint UnionBanc brokerage account -4127 to Marta's separate brokerage account ending in -5490 was made by Omar and/or Marta within a few months after a notice of proposed estate tax changes was sent to Omar at 289 Sea Vale Street (proposing a deficiency of over $1.4 million owed by the Estate). The like lien continued to attach to the transferred securities because Marta was not a purchaser or holder of a security interest.

61.     Each sale of securities originating from Omar created a like lien on all of Marta's property or interests in property up to the full value of the $372,339.60 in securities she received.

62.     On July 16, 2013, Marta liquidated $145,224.10 in securities from the individual -4127 account, and on that same date wrote a check from the -4127 account for $140,000 to fund an MFS 529 Savings Plan for the benefit of Leila Firestone. Here, the

COMPLAINT                                    13

1    like lien continued to follow the funds transferred to the MFS 529 Savings Plan, held by

2    Marta for the benefit of Leila Firestone (Ghaida's granddaughter).

3    *Arab Bank Shares and the Waxwing Property*

4    63.     Omar sold shares of Arab Bank stock that were includible in the gross estate

5    of Ghaida, and transferred those funds to various bank accounts in Mexico. On February

6    21, 2014, Omar transferred $499,000.00 of funds from the sale of Arab Bank stock

7    originally held by Ghaida, from an account he controlled at Banco Mercantil in Mexico

8    to an account in the United States held by a third-party, Sherry Rubalcava. Omar then

9    ensured that $432,719.13 of those funds (traceable to the sale of Ghaida's Arab Bank

10    shares) were transferred to an escrow account to acquire real estate located at 1250

11    Waxwing Lane, Chula Vista, CA ("Waxwing Property"). The grant deed for the 2014

12    acquisition of the Waxwing property lists Omar as the sole owner of the Waxwing

13    property.

14    64.     The like lien set forth in 26 U.S.C. § 6324(a)(2) attached to the value of the

15    Waxwing property, by virtue of Omar having sold assets includible in the gross estate

16    and the like lien attaching to all property or interests in property held by Omar.

17    65.     On April 1, 2015, Omar sold the Waxwing property for $440,000, resulting

18    in net sale proceeds of $409,118.65.

19    66.     On April 3, 2015, the same date the Estate's attorney signed a stipulation

20    regarding the Estate owing $1,683,670 in additional estate tax liabilities, Omar wired

21    $399,818.65 of the sale proceeds of the Waxwing property to a new escrow account to

22    acquire real property located at 644 2nd Avenue, Chula Vista, CA ("2nd Ave Property").

23    The like lien thus attached to the 2nd Ave Property, as traceable via the Waxwing

24    Property and the Arab Bank shares to assets includible in the gross estate.

COMPLAINT            14

67.     The real property located at 289 Sea Vale, Chula Vista, CA ("Sea Vale Property") had been transferred to the Ghaida Living Trust on March 10, 2009, and had subsequently been transferred on June 12, 2009, following Ghaida's death, by Omar and Ramses as co-trustees of the Ghaida Living Trust to Omar and Marta as trustees of the Firestone Living Trust (Omar and Marta's living trust established June 2, 2009) for no consideration. As a result, the estate tax lien continued to attach to the Sea Vale property.

68.     On April 17, 2015, Omar and Marta sold the real property located at 289 Sea Vale, Chula Vista, CA for $440,000, and received $412,542 in net proceeds from the sale. The like lien attached to the proceeds of the sale of the Sea Vale property.

69.     On April 20, 2015, $280,000 was sent from the escrow account of the sale of the Sea Vale property to the escrow account for the acquisition of the 2nd Avenue property. The like lien thus attached to the 2nd Avenue property.

70.      The remaining sale proceeds from the Sea Vale property of $132,542 were transferred to Marta as trustee of the Firestone Irrevocable Trust dated February 23, 2015 and deposited into an account at Union Bank (account number ending in -2059). The like lien continued to attach to the funds placed in the Firestone Irrevocable Trust account.

71.     The escrow for acquisition of the 2nd Avenue property closed on April 20, 2015. On the grant deed, Marta Firestone was listed as the sole owner of the 2nd Avenue property.

72.     On August 19, 2015, Marta recorded a quitclaim deed transferring the 2nd Avenue property for no consideration from herself to herself as trustee of the Firestone Irrevocable Trust dated February 23, 2015. After Marta transferred the 2nd Avenue property for no consideration to herself as trustee of the Firestone Irrevocable Trust, a like lien amounting to $679,818.65 arose and attached to all of Marta's property or

COMPLAINT                                        15

1    interests in property.

2    73.    Marta lived in the 2nd Avenue property and had the beneficial use of the

3    property, without paying rent to the Firestone Irrevocable Trust for her use of the

4    property. The Firestone Irrevocable Trust has not filed any income tax returns (i.e. has

5    not reported any rental income) and has not filed any gift tax returns (i.e. has not reported

6    any gifts made to Marta for the fair market value of the rental value of the property).

7    74.    Marta sold the 2nd Avenue property on January 23, 2018.

8    75.    In total, Marta received the following amounts of money traceable to the

9    estate, and subject to the like-lien of 26 U.S.C. § 6324(a)(2):

10                 a.   $372,339.60 in securities on June 24, 2013 (funds used to acquire the

11                      securities are traceable to the St. Francis property sale proceeds, and the

12                      securities were held in a jointly owned account by Omar and Marta) to

13                      Marta's separate UnionBanc Investment account;

14                 b.   $399,818.65 from the sale of the Waxwing property (then wired on April

15                      3, 2015 to acquire the 2nd Ave property, title of which was placed solely

16                      in Marta's name);

17                 c.   $280,000 from the sale of the Sea Vale property (wired to partially fund

18                      the purchase of the 2nd Ave property on April 20, 2015);

19                 d.   $132,542 from the sale of the Sea Vale property (transferred to the

20                      Firestone Irrevocable Trust bank account controlled by Marta on April

21                      20, 2015, and funds which were used for Marta's benefit).

22    76.    Omar, as Trustee of the Ghaida Living Trust, transferred the Sea Vale

23    property and proceeds from the sale of other property of the Estate and other Estate funds

24    to himself and Marta, which Marta used to obtain property she placed in her name, the

COMPLAINT                                    16

name of the Firestone Irrevocable Trust, and in her father's name. The estate tax lien attaches to any property includible in Ghaida's gross estate, and the like lien attaches to traceable property, including sale proceeds. Marta was merely a transferee of Omar, who was the initial transferee of the nonprobate property from the trust. Because either the estate tax lien or like lien was never divested from the property Omar and Marta received (including funds from the accounts and sales proceeds), the estate tax lien or like lien remains attached to such property.

WHEREFORE, the United States of America requests that the Court:

D. Enter judgment in favor of the United States of America and against Marta E. Firestone, finding that a like lien pursuant to 26 U.S.C. § 6324(a)(2) attaches to all property of Marta up to the amount of $1,184,700.25, and that the estate tax lien of 26 U.S.C. § 6324(a)(1) has not been divested from the property Marta received (including funds from the accounts and sales proceeds for assets that were sold).

## COUNT V: SETTING ASIDE VOIDABLE TRANSFERS TO MARTA

77. Marta, via Omar, received the following amounts of money traceable to the estate:

a. $372,339.60 in securities on June 24, 2013 (funds traceable to St. Francis property sale proceeds, and held in an account jointly owned by Omar and Marta) to Marta's separate UnionBanc Investment account;

b. $17,000 in funds from Omar's account in Mexico (containing funds from Arab Bank shares and/or financial accounts) on December 16, 2013;

c. $399,818.65 from the sale of the Waxwing property (then wired on April 3, 2015 to acquire the 2nd Ave property, title of which was placed solely

in Marta's name);

d. $280,000 from the sale of the Sea Vale property (wired to partially fund the purchase of the 2ⁿᵈ Ave property on April 20, 2015); and

e. $132,542 from the sale of the Sea Vale property (transferred to the Firestone Irrevocable Trust bank account controlled by Marta on April 20, 2015, and funds which were used for Marta's benefit).

78.     Each transfer, referenced in paragraph 77 above, from Omar to Marta's name alone (or from being jointly owned by Omar and Marta to Marta's name alone) was made with actual intent to hinder, delay or defraud the United States with respect to the estate tax liability at issue in this action.

79.     Each transfer, referenced in paragraph 77 above, to Marta was made by Omar for no consideration, Omar did not receive reasonably equivalent value in exchange for each transfer, and Omar reasonably should have believed that he would be liable for the proposed deficiency in estate tax, given the timing of the transfers, his actual knowledge of the audit, and his actual knowledge of the proposed deficiency.

80.     The transfer of securities on June 24, 2013, valued at $372,339.60, was made less than 2 months after a notice of proposed estate tax changes was sent to Omar at 289 Sea Vale Street (proposing a deficiency of over $1.4 million in estate tax owed). The transfer was made to an insider (Omar's wife), Omar had received notice of the pending deficiency, Omar removed and/or concealed assets from the IRS, the transfers to Marta were substantially all of Omar's assets, and Omar was insolvent or became insolvent shortly after the transfers were made (given his personal liability for the unpaid estate tax).

81.     The transfer of funds from Omar Firestone to Marta Firestone was intended

by Omar to hinder, delay or defraud his creditors, including the United States of America; therefore, the transfer is and was fraudulent and of no effect as to the United States.

82. The transfers of funds were made without the exchange of reasonably equivalent value and left Omar with remaining assets which were unreasonably small or insufficient to pay his current and future debts, including his liability as co-executor of the Estate and trustee of the Ghaida Living Trust; therefore, the transfers were and are fraudulent and of no effect as to the United States.

83. The transfers referenced in paragraph 77 above were made without the exchange of reasonably equivalent value and during a period when Omar intended to incur, or believed or reasonably should have believed that he would incur, debts.

84. Assets held by Marta as trustee of the Firestone Irrevocable Trust have in fact been in Marta's continuous use, possession, and control in her personal capacity. Marta has enjoyed all burdens and benefits of ownership. The Firestone Irrevocable Trust is a sham trust and has merely been the nominee or alter ego for Marta with respect to all funds in its bank or financial accounts.

85. The transfer of funds from Marta to herself as trustee of the Firestone Irrevocable Trust was intended by Marta to hinder, delay or defraud her creditors, including the United States of America; therefore, the transfer is and was fraudulent and of no effect as to the United States.

86. The transfer of the funds by Marta to herself as trustee of the Firestone Irrevocable Trust was made without the exchange of reasonably equivalent value and during a period when Marta intended to incur, or believed or reasonably should have believed that she would incur, debts. The transfer left Marta with remaining assets which were unreasonably small or insufficient to pay her current and future debts, including her

COMPLAINT                                        19

1    liability for having transferred or sold assets subject to the like lien of 26 U.S.C.

2    § 6324(a)(2); therefore, the transfer was and is fraudulent and of no effect as to the

3    United States.

4          WHEREFORE, the United States of America requests that the Court:

5    E.   Enter judgment in favor of the United States of America and against Marta E.

6         Firestone, finding that each transfer of funds referenced in paragraph 77 of the

7         Complaint is fraudulent as to the United States, and enter a money judgment in

8         favor of the United States and against Marta Firestone in the amount of

9         $1,201,700.25, pursuant to Cal. Civ. Code § 3439.08, an amount equal to the

10        value of the transfers from Omar to Marta at the time the assets were transferred

11        to Marta.

12   F.   Enter judgment finding that transfers of funds by Marta to the Firestone

13        Irrevocable Trust are voidable as to the United States, and furthermore that the

14        Firestone Irrevocable Trust is the mere nominee and/or alter ego and/or

15        fraudulent transferee of Marta.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

COMPLAINT                          20

**COUNT VI: ENFORCE ESTATE TAX LIEN AGAINST LEILA FIRESTONE FOR ASSETS STILL SUBJECT TO ESTATE TAX LIEN AND ENFORCE THE LIKE LIEN AGAINST LEILA AS A TRANSFEREE OF A TRANSFEREE**

*Funds from Arab Bank*

87.     Omar directed that proceeds from the sale of the Arab Bank shares and/or Arab Bank savings account be transferred to a bank account he controlled at a financial institution in Mexico.

88.     Omar later removed his name from this Mexican bank account and placed the account (containing funds from the sale of Ghaida's Arab Bank shares and/or Ghaida's Arab Bank savings account) in the name of his daughter, Leila Firestone (Ghaida's granddaughter).

89.     At the time of Ghaida's death, Omar inherited 50% of the value of the Arab Bank shares includible in Ghaida's gross estate. The total shares were valued at $3,456,999, and Omar's inheritance was $1,728,499.50 in Arab Bank shares.

90.     At the time of Ghaida's death, Omar inherited 50% of the value of the Arab Bank savings account includible in Ghaida's gross estate. The savings account was valued at $800,000.00, and Omar's inheritance was $400,000.00 in funds from the Arab Bank savings account.

91.     The transfer of funds in the Arab Bank savings account from Omar to Leila was for no consideration, and as a result, the funds were not divested of the estate tax lien set forth in 26 U.S.C. § 6324(a)(1).

92.     Additionally, the transfer of funds from Omar to Leila originating from the sale of Arab Bank shares includible in the gross estate was subject to the like lien set forth in 26 U.S.C. § 6324(a)(2), and having been for no consideration, the funds were still subject to the like lien set forth in 26 U.S.C. § 6324(a)(1).

COMPLAINT                                          21

WHEREFORE, the United States of America requests that the Court:

G. Enter judgment in favor of the United States of America and against Leila A. Firestone, in finding that all funds she received from Omar via a transfer in ownership of Mexican bank accounts up to the value of $400,000.00 are encumbered by the estate tax lien of 26 U.S.C. § 6324(a)(1), and an additional amount up to the value of $1,728,499.50 is encumbered by the like lien set forth in 26 U.S.C. § 6324(a)(2); and

H. Enter an Order of Repatriation ordering Leila A. Firestone to repatriate all funds traceable to transfers from Omar up to the amount of $2,128,499.50.

## COUNT VII: SETTING ASIDE VOIDABLE TRANSFERS TO LEILA

93.     Omar directed that proceeds from the sale of the Arab Bank shares and/or Arab Bank savings account be transferred to a bank account he controlled at a financial institution in Mexico.

94.     Omar later removed his name from this Mexican bank account and placed the account (containing funds from the sale of the Arab Bank shares and/or Ghaida's Arab Bank savings account) in the name of his daughter, Leila Firestone (Ghaida's granddaughter).  This transfer of funds from Omar to Leila is voidable as to the United States.

95.     At the time of Ghaida's death, Omar inherited 50% of the value of the Arab Bank shares includible in the Estate. The total shares were valued at $3,456,999, and Omar's inheritance was $1,728,499.50 in Arab Bank shares.

96.     At the time of Ghaida's death, Omar inherited 50% of the value of the Arab Bank savings account includible in Ghaida's gross estate. The savings account was valued at $800,000.00, and Omar's inheritance was $400,000.00 in funds from the Arab

COMPLAINT                          22

Bank savings account.

97.    The transfer of funds from Omar to Leila was intended by Omar to hinder, delay or defraud his creditors, including the United States of America; therefore, the transfer is and was fraudulent and of no effect as to the United States.

98.    The transfer of funds from Omar to Leila was made without the exchange of reasonably equivalent value and left Omar with remaining assets which were unreasonably small or insufficient to pay his current and future debts, including his personal liability for the estate tax, and personal liability for having transferred or sold assets of the Estate; therefore, the transfer was and is fraudulent and of no effect as to the United States.

99.    The transfer of the funds Omar to Leila was made without the exchange of reasonably equivalent value and during a period when Omar intended to incur, or believed or reasonably should have believed that he would incur, debts.

WHEREFORE, the United States of America requests that the Court:

I.   Enter judgment in favor of the United States of America and against Leila A. Firestone, finding that all transfers of funds she received from Omar that are traceable to the gross estate of Ghaida Firestone, including Arab Bank shares or accounts, are voidable as to the United States; and

J.   Enter a money judgment against Leila A. Firestone and in favor of the United States in the amount of $2,128,499.50, or such lesser amount consistent with the provisions of Cal. Civ. Code § 3439.08, in an amount equal to the value of the transfers from Omar to Leila at the time the assets were transferred to Leila.

//

//

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## COUNT VIII: FORECLOSURE AGAINST 81 F STREET PROPERTY

*Acquisition of 81 F Street*

100.   On April 25, 2017, Marta purchased a cashier's check in the amount of $350,000 from her Bank of America account (ending in -9721) made payable to Enrique Quijada, her father, and deposited the funds into a newly opened account at Bank of America in Enrique's name (Marta controlled this newly created bank account) ending in -7469.

101.   This $350,000 cashier's check represented funds subject to the like lien set forth in 26 U.S.C. § 6324(a)(2), by virtue of Marta having sold assets traceable to the Estate of Ghaida Firestone that were subject to the estate tax lien, or encumbered by the like lien after Omar sold the asset and transferred the proceeds to Marta.

102.   Additionally, the funds used to purchase the $350,000 cashier's check include Marta's withdrawal of $328,910.05 from her Union Banc investment account on April 4, 2017, which she had deposited into her Bank of America account ending -9721 on April 24, 2017. The funds in Marta's Union Banc account were subject to the like lien, and also traceable to assets includible in the gross estate that Omar had transferred to Marta.

103.   On April 28, 2017, Marta transferred $141,136.12 via a wire transfer from a bank in Mexico to the account she controlled in her father's name at Bank of America, account number ending in -7469. These funds were also subject to the like lien, as Marta had previously sold or transferred assets traceable to the gross estate of Ghaida.

104.   Marta then used the funds she had transferred to her father's name, for no consideration, and that were subject to the like lien, to acquire the real property located at 81 F Street, Chula Vista, CA 91910 (APN: 569-071-06-00), legally described as:

The East 55.25 feet of the West 289.75 feet of the South 140 feet of Lot 14,

COMPLAINT                    24

Quarter Section 124, Chula Vista, according to Map thereof No. 505 filed in the office of the County Recorder of San Diego County.

105.   Enrique Quijada took title to the property via Grant Deed on May 2, 2017 (Rec. No. 2017-0195520). Enrique subsequently transferred the property for no consideration to Enrique E. Quijada, Trustee of the Enrique E. Quijada Living Trust (created by Revocable Trust Agreement dated July 21, 2017).

106.   As Marta transferred the funds to acquire 81 F Street to Enrique for no consideration, and the funds were then used to acquire the real property located at 81 F Street, the 81 F Street property is now subject to the like lien created under 26 U.S.C. § 6324(a)(2) and/or the estate tax lien of 26 U.S.C § 6324(a)(1) by virtue of being acquired with assets traceable to the gross estate of Ghaida Firestone.

### *Enrique Quijada is Marta's Nominee and/or Fraudulent Transferee*

107.   Enrique Quijada only holds nominal title to the 81 F Street Property. Marta Firestone has remained in continuous use, possession, and control of the 81 F Street Property, and has enjoyed all burdens and benefits of ownership. Enrique Quijada is and has merely been the nominee or alter ego for Marta Firestone with respect to his purported title and ownership of the 81 F Street Property.

108.   The transfer of funds from Marta Firestone to Enrique Quijada was intended by Marta to hinder, delay or defraud her creditors, including the United States of America; therefore, the transfer is and was fraudulent and of no effect as to the United States.

109.   The transfer of the funds used to acquire the 81 F Street Property from Marta to Enrique Firestone was made without the exchange of reasonably equivalent value and left Marta with remaining assets which were unreasonably small or insufficient to pay her

COMPLAINT                                    25

current and future debts, including her liability for having transferred or sold assets subject to the like lien of 26 U.S.C. § 6324(a)(2); therefore, the transfer was and is fraudulent and of no effect as to the United States.

110.   The transfer of the funds used to acquire the 81 F Street property from Marta to Enrique Quijada was made without the exchange of reasonably equivalent value and during a period when Marta intended to incur, or believed or reasonably should have believed that she would incur, debts.

111.   Pursuant to 26 U.S.C. § 6324, on the date of the Decedent's death, a federal estate tax lien arose in favor of the United States upon all property and rights to property, whether real or personal, which was includible in the Decedent's gross estate, including the subject property.

112.   The estate tax lien arising on the date of the death of the Decedent, has priority over all interests in the subject real property acquired after the attachment of the estate tax liens, subject to the provisions of 26 U.S.C. § 6323(a).

113.   Pursuant to 26 U.S.C. §§ 6321 and 6324, on the dates of the assessment set forth in paragraph 31 above, federal tax liens arose in favor of the United States upon all property and rights to property includible in the gross estate of the Decedent, including the subject property.

114.   Pursuant to 26 U.S.C. §§ 6321 and 6324, to the extent that any Defendant transferred property or rights to property that were includible in the gross estate to a purchaser or security interest holder, a "like lien" arose in favor of the United States upon all property and rights to property of the transferor.

115.   Under 26 U.S.C. § 7403(c), the United States of America is entitled to a decree of sale of the subject property described in paragraph 104, above, to enforce its

COMPLAINT                                26

liens.

WHEREFORE, the United States of America requests that the Court:

K. Enter judgment in favor of the United States of America and against Marta E. Firestone, in finding that Marta transferred $391,136.12 to Enrique Quijada for no consideration, and those funds were encumbered by the like lien described in 26 U.S.C. § 6324(a)(2), and the like lien continues to attach to the 81 F Street Property up to the value of $391,136.12 based on the funds having been used to acquire the property;

L. Order and adjudge that Enrique Quijada holds mere legal title to the 81 F Street Property as the nominee and/or alter ego of Marta E. Firestone;

M. Order and adjudge that Enrique Quijada is the fraudulent transferee of Marta E. Firestone and to set aside the fraudulent transfer, and subject the 81 F Street Property to the claims of the United States;

N. Order and adjudge that the United States is entitled to foreclose on the 81 F Street Property to satisfy the unpaid estate tax liabilities of the Estate of Ghaida Firestone;

O. That this Court determine the validity and priority of all liens on and other interests in the 81 F Street Property and order that the proceeds from any judicial sale of such property be distributed accordingly.

P. Enter judgment in favor of the United States as set forth in each claim for relief detailed in this Complaint; and

//

//

//

COMPLAINT                                27

Q. Order that the United States be awarded its costs and such other relief as is just

and proper.

Respectfully submitted this 2nd day of January, 2019,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Nithya Senra*
NITHYA SENRA, CA SBN 291803
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683, Ben Franklin Station
Washington, D.C. 20044
Phone: (202) 307-6570
Fax: (202) 307-0054
Nithya.Senra@usdoj.gov

ADAM L. BRAVERMAN
United States Attorney
*Of Counsel*

Attorneys for United States of America

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law,  except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.   *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a)  PLAINTIFFS

United States of America

## DEFENDANTS

Omar G. Firestone, Marta E. Firestone, Leila A. Firestone, Enrique Quijada

**(b)**  County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
Nithya Senra, Trial Attorney, U.S. Dept. of Justice, Tax Division
P.O. Box 683, Ben Franklin Stn, Washington, D.C. 20044
(202) 307-6570

Attorneys *(If Known)*

'19CV0003 DMS KSC

## II.  BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [x] 1  U.S. Government Plaintiff
- [ ] 2  U.S. Government Defendant
- [ ] 3  Federal Question *(U.S. Government Not a Party)*
- [ ] 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | **PERSONAL PROPERTY** | **LABOR** | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V.  ORIGIN *(Place an "X" in One Box Only)*

- [x] 1  Original Proceeding
- [ ] 2  Removed from State Court
- [ ] 3  Remanded from Appellate Court
- [ ] 4  Reinstated or Reopened
- [ ] 5  Transferred from Another District *(specify)*
- [ ] 6  Multidistrict Litigation - Transfer
- [ ] 8  Multidistrict Litigation - Direct File

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 USC 7403, 7404, 6324
Brief description of cause:
Suit to collect unpaid estate taxes, enforce estate tax lien and like lien

## VII.  REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $   2,537,554.26

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☒ No

## VIII.  RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____     DOCKET NUMBER _____

DATE   01/02/2019

SIGNATURE OF ATTORNEY OF RECORD   /s/ Nithya Senra

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____